May it please the Court, my name is Stacey Tolchin and I represent Petitioner Fedoseev who is present today with his U.S. citizen wife. I would like to reserve three minutes of my time for rebuttal. The Board's 2012 decision denies Petitioner's case based on two grounds, that there was no ineffective assistance of counsel and no due diligence for purposes of equitable tolling. Both conclusions constitute an abuse of discretion. In Escobar Grijalva in 2000, this Court acknowledged the deficiencies of many practitioners in the immigration bar, stating that the deprivation of the statutory right to counsel deprives an alien asylum seeker of the one hope she has to thread a labyrinth almost as impenetrable as the Internal Revenue Code. Now Petitioner arrived in the United States in March of 2005 and within five months he applied for asylum because he was afraid to return to Armenia and Russia. He spoke no English but sought out assistance from an individual who turned out to be a notary and she fabricated an asylum claim based on sexual orientation. Let me ask you, but he told, your client told that person about the valid grounds for seeking asylum. He did and she said it wasn't strong enough and if he erased it he would be deported. But why wouldn't he then have told his lawyer once he got an actual lawyer, because I understand that's one of the grounds of ineffective assistance you're asserting, is that the lawyer didn't make the appropriate inquiries? That's correct, Your Honor. So he met with Zuma Aryan but then on a very limited basis and because the notary had told him that he would be deported if he raised his claim, he didn't affirmatively raise it. But our claim is that she never inquired into the actual facts of the case and she never says that she did. Under the circumstances, obviously a minor isn't going to be expected to know anything about the grounds for seeking asylum and your client apparently knew enough to tell this person at the very outset that, hey, this is a potential basis on which maybe I could get relief. So First Your Honor, Lynn does involve a minor but the actual decision says that the requirement of the factual inquiry applies to all asylum claims. He didn't speak any English. He had just arrived in the country. As the record shows, he had faced past persecution based on his political activity. It's not in the record but there's an understanding that he was distrustful of government. So he goes to an authority and does what she says. He tells her the claim is not true and then withdraws the asylum application. Now she says she was never told the claim wasn't true. I think we have to take your client's version of events as the truth, right, for purposes of deciding this appeal, don't we? I think that's correct. I think under the Court's decision in Marufi, that's correct. And again, in order to have a reasonable tactical decision, it has to be reasonable. It definitely was reasonable if your client told her that, hey, the grounds asserted in this application are fraudulent. Correct. But then the next inquiry would be, are you afraid to go back to your country? And that was never done. Yeah. Well, OK. No, I think that's right on the record we have here. But I guess I don't understand why. Why do you think it was the lawyer's obligation to, I guess, inquire as opposed to your client is sophisticated enough to know that, hey, these things happened to me. They might be relevant to this process here in this new country I'm in because he already told someone that before. But he was told by who the person he thought was an authority that if you tell this claim, you'll get deported. So why would he then go to a lawyer and raise it again? I thought you well, maybe you can point me to where in the record I thought all he was told is that this I don't know the opinion of whoever this person was. I don't think this is a strong enough ground. I've got this better ground, which turned out to be completely fabricated. But I don't remember him being told that if you say this again, you're going to be removed. Yes, it's in the declaration. I will come back on rebuttal to give you the site for that. So just going forward, the limb requirement is there. But the other issue is that petitioner informed Ariane that he was dating a US citizen. And now Ariane again disputes this. But the idea that she would recommend voluntary departure over pursuing what she believed to be a valid claim is that's an ineffective assistance of counsel. There's a new case that we 28J'd. Is she believed to be a valid claim? Are you talking about Ms. Ariane? Ms. Ariane says that she was never informed the contents weren't true. So if that's the case, why withdraw it? There's a new case that we 28J'd called Salazar-Gonzalez v. Lynch from 2015. And it's a very similar case involving an appeal that was not filed by an attorney where the applicant was eligible for cancellation of removal. And the attorney said, we'll just take voluntary departure and you can consular process. But the advice was wrong. And based on that, the court found that there was ineffective assistance of counsel. Are you saying that Mr. Fedosev told Ms. Ariane that he had a valid asylum claim to pursue? He said that the claim that I told the asylum officer was not true. He didn't tell her the facts of his actual past persecution, but she never inquired. Right. Okay. So let's just take everything into account here. So taking Mr. Fedosev's declaration as true, he told Ms. Ariane that his pending asylum claim was false. Correct? Correct. All right. He never told her that he had a valid claim? He never told her the true facts of what happened. Okay. So that is a correct statement. He never told her he had a valid claim? Correct. Okay. And Ms. Ariane then recommended that he withdraw the false application and pursue voluntary departure? That's correct. All right. Which would have preserved his ability to eventually adjust status and re-enter the country? So no on that. Why is that? Okay. So if he was married to his U.S. citizen wife in the U.S., then he would apply for adjustment of status. He never would have needed voluntary departure. It's an easy case to do. He would have needed a fraud waiver based on the misrepresentation. By taking voluntary departure, when you depart the U.S., you trigger a 10-year bar to coming back for being here unlawfully and having worked without authorization. So if he had left the U.S., he would have had a very, very, very difficult time coming back here. Even if he'd gotten married? Correct. Right. Because the act of leaving the country triggers that unlawful presence bar. But it would have still preserved, if he waited, I guess, the 10 years as required, he would eventually be able to adjust status, just not as soon as he would like. Well, when you overstay voluntary departure, it converts to a deportation order. But if he hadn't overstayed the voluntary? Then he would have left the U.S. and triggered the bar. Triggered which bar? The unlawful presence bar. So because he's here, he overstayed his visa, he applied for asylum and he worked. When he leaves under voluntary departure, he triggers the unlawful presence bar to coming back. So even if he was married, he'd have that problem. But then after 10 years, he'd be able to come back. After 10 years, correct. But he's going back to a country where he was beaten. Well, I understand that. But we're going on based on what he said. But eventually, I mean, this is some of this, you know, it's very difficult because of the challenges that are presented to someone who's just arrived from a foreign country, especially if they have no familiarity at all, which is most of the people. But we're trying to work within what the law and the regulations are. I'm just trying to understand what the situation actually is and what, and especially based on what you're appealing, because you're saying that what Ms. Atrium told him was just completely inappropriate, wrong, and constituted an effective assistance of counsel. That's right. I mean, what should have happened is you should have met with him, asked him, are you afraid to go back, withdrawn that asylum application and filed a new one and gone forward on the new one. And just my time's running out, but I do want... I control your time, so go ahead. I want to point out that asylum is discretionary, adjustment of status, consular processing, all discretionary. So because he lied and he admitted to lying, it's very possible that he would be ineligible for discretionary relief, right? But withholding of removal and convention against torture are mandatory. So even if he lied, as long as he makes out a claim of more likely than not of persecution or torture, he's entitled to those forms of relief. Okay. But let's focus, because your primary focus is on Ms. Atrium. And so I want to make sure I understand, because it seems like your client's declaration certainly suggests that Ms. Atrium left him with an incorrect understanding of the consequences of voluntary departure. It seems like that's what you're saying, you said in your briefs and what you're saying now. But what is there in the record indicating exactly what Ms. Atrium told him? We have declarations from both the petitioner and his wife saying that they met with her and that they were told that once they got married, they could just close their case and apply in the U.S. And wasn't any, you know, misunderstanding cleared up at the immigration hearing when the immigration judge clearly described the consequences of accepting voluntary departure? And then, if I recall correctly, in the record, he indicated, your client, that he understood those consequences. So in the record, I do want to point out, there was no transcript generated. We requested that. Now, according to the immigration judge, she's transcribed the relevant portion. The thing to remember is that he wasn't married yet. So according to Arianne's advice, if he got married, he could quit. Focus on what the judge told him. The judge says, you have to leave. And if you don't, you'll be denied forms of relief. Do you understand? He says, yes. But the key is that the judge's obligations are not, they're not the only obligations. I understand that. But you're saying that he was misled. And then so then that takes me to the next question, because it seems like the immigration judge did tell him. And so even if, you know, you can establish that his lawyer was ineffective in the advice that she gave based on what she knew, it seems like your client should have become aware of the ineffectiveness at the time of the immigration hearing, when the immigration judge told him and described the consequences of accepting voluntary departure. So that leads me to the question of, does that not affect whether he was diligent in waiting more than seven months to begin consulting with other lawyers or, and investigating the options to remain in the country? So, right. So as to this issue, again, he wasn't married at the time of the decision, right? So according to Arianne's advice, once he got married, the case would get closed now, but he would get married and everything would change. But he was told, he was told he had to, he had to depart within so many days. That's correct. But again, he was relying on Arianne's advice, which says you're going to be fine. I mean, he's already dating and living with... Despite what the judge told him too. Right. So I just want to point the court to Salazar-Gonzalez again at page 922. It's hardly rational to think that someone with a high school education would have the wherewithal to know that he should ignore and override his lawyer's advice. So even when a judge, I mean, does that have a, does that, I don't believe Salazar-Gonzalez has an instance where the judge is telling somebody clearly, or at least based on what we have in the record that, that that, you know, exactly what it meant. So I don't think it's discussed because again, there's no transcript. So it's hard in these cases and we don't have the full transcript here to really see. But I do want to point out in the ineffective assistance of counsel context in the criminal context, there's an obligation by a judge to advise on, let's say, the consequences of a plea for immigration purposes. And that's separate from the attorney's advice. And those are two bases for reopening. And so they are independent obligations. That's also recognized, I think, with the Padilla decision from the Supreme Court. But would you address please the delay in seeking to reopen? Right. So they were following, the petitioner and his wife, now wife, were following Arianne's advice. So they got engaged within about seven months of the decision and then planned a wedding for February 14th of 09. In that time, before they even get married, which was what they believe was required under Arianne's advice, they go start seeing lawyers. At that point, they're told, you've got a problem. And that's when they get to my office in January of 09. So they were acting diligently because in their, based on Arianne's advice, there was nothing they could even do until they were married. Because once they were married... But they could wait years before getting married? They didn't think there was any clock running? Right. Because she had said, let's close the case. You guys get married and then you can apply for a green card. Thank you. Good morning, your honors. Good morning. May it please the court. My name is Kosei Yukimori and I represent the United States Attorney General in this case. This petition for review should be denied because the board properly determined that petitioner filed an untimely motion and that equitable tolling did not serve to excuse the filing deadline. Now, petitioner concedes that the motion was not timely filed and focuses solely on equitable tolling. However, because he failed to demonstrate due diligence or ineffective assistance, this petition for review should be denied. As the board and immigration judge both determined, petitioner failed to exercise due diligence from January 2008 to August 2008. As he stated in his declaration, he agreed to withdraw his applications and accept voluntary departure based on his alleged understanding that he can remain in the United States. But come January 2008, when he went to do exactly that, he was informed by the immigration judge that he had to leave, that he could not return unless he returned lawfully, and that if he did not leave by April 2008, that he would be ineligible for a slew of relief, including adjustment of status. Let's focus on his lawyer first for just a minute, because if we take Ms. Atrarian's declaration as true, it seems that Mr. Fedese may actually have a stronger case than under the facts alleged in his own declaration, because Ms. Atrarian states that her client never told her that his asylum application was false. But given that Mr. Fedese wanted to marry his girlfriend, as highlighted by his counsel, and stay in the country, I guess, why was it sound advice to recommend voluntary departure that would force him to leave the country in 90 days? Well, two responses to that. The very first being, as Your Honor mentioned, that it's the alien's version that must be accepted as true. And alternatively, accepting the former counsel's version is true. It is, it was effective assistance, Your Honors, as both the petitioner and his former girlfriend, now wife, stated in their declarations. Former counsel believed that the case for their application for asylum was weak. So in light of that, and in retrospect, it makes sense, since he had filed a fraudulent application, there would be no merit to his application. In light of that... You've seen, I suppose, the documents that he has presented now. Have you not? To support, or that he has to submit why he should be granted asylum. Have you seen all the documents? I have, yes. They're pretty troubling in terms of, you know, what kind of conduct that he faced in his country of origin, and pretty compelling. So, really focused on whether or not there should be equitable tolling here. And I'm just wondering, why would the lawyer not have asked him if there was anything else that he had? That seems like a sort of common, basic representation question that the lawyer would do, especially in immigration cases. I think context is important in this case. A petitioner knew that he had filed a fraudulent application while it was in the mail. He knew that it was a fraudulent application when he appeared before the asylum officer. He knew when he testified before an asylum officer, and perpetrated the fraud, that he had filed a fraudulent application. At that time, didn't disclose his allegedly now legitimate claim. He further appeared in immigration court over the course of over two years, appeared six times before the immigration judge, submitted various documents supporting this fraudulent claim. And then at some point, he tells his attorney, I'm sorry, this was all a lie. But the last thing on the attorney's mind should be, well, I wonder if he has a legitimate claim. The board recently determined- Why do you say that in light of Lynn? I mean, I think counsel is correct that we could read Lynn one of two ways. And why wouldn't we read it to establish a more general duty on the part of an immigration lawyer to at least inquire and do a full investigation of any potential grounds that a client may have? Well, the issue is effective assistance. And in Lynn, there was clearly a deficiency of that. He had East Coast counsel who never interviewed or spoke with the West Coast minor detained petitioner. And when he appeared for the individual hearing, the East Coast counsel wasn't even expecting to represent the detained alien at the time. And as this court stated in Lynn- Just like the facts in Lynn, because they're not. So I don't think it does any good for you to run through all the differences. What I'm asking is, can't Lynn be read to establish a general duty on the part of any competent immigration lawyer to at least inquire of the client? Are there any other valid grounds on which we could seek relief? No, Your Honor, because the lens with which this case must be looked at, as all ineffective assistance of counsel claims must be judged in the immigration context, bearing in mind that aliens shoulder a heavier burden to establish ineffective assistance, is whether there was fundamental fairness in the case. Did the alien have an opportunity to present his case? Was he prevented from presenting his case by former counsel? And that's just not the case. Petitioner knew he had filed a frozen application. He had never stated to the asylum officer that there was a legitimate claim. He could have. Under the regulations, the asylum officer is obligated to ask whether there are any eligible grounds for asylum. But he didn't raise anything. And so he had an opportunity to present his claim over the course of nearly three years, and at least seven opportunities before an asylum officer or an immigration judge. And he had never done so, Your Honor. So in light of that, he had an opportunity to present his claim. He didn't. And so there is not that analogy where we can draw a principle from Lynn and generally apply to all immigration cases, regardless of context, and say that a former counsel must ask these X, Y, Z specific questions, Your Honor. And yes. I just have a question. Because seeking a motion to reopen, I'm trying to figure out how should an immigration judge resolve the inconsistencies between a declaration of a petitioner and then the statement from the lawyer, the declaration? Does the IJ have to accept the petitioner version of events as true in the context of an ineffective assistance counsel claim? Or do we look at what the lawyer said? Well, according to this Court's decision, Nod v. Casey decided in 2008, is one example wherein this Court stated that unless the alien's version is inherently plausible, that that's the version that must be accepted. And in that- You mean inherently implausible. I'm sorry. Inherently implausible. Right. And in that case, there was also a disagreement about what exactly happened. The attorney gave an explanation, and then that was inconsistent with what the alien claimed was the reason why he was prevented from filing. Similar to this case, what the alien's claim here is not inherently implausible. If so, it should be accepted. That being said, the immigration judge's decision does include analysis of both versions of events. One in the text, which is according to this Court's precedent, the alien's version, and one in the footnote for the sake of completeness, Your Honor. And on the issue of voluntary departure and adjustment of status that was raised by opposing counsel, this case is unlike Salazar. In Salazar, the former counsel advised the alien that he was eligible for consular processing when he, in fact, was statutorily ineligible for that type of relief. That's not the case here. Had Petitioner accepted voluntary departure, he could apply for waivers for inadmissibility. So he does not have to wait the 10 years if he's granted the waiver. Okay. That's what I wanted to make sure I was clear on. So you're disputing your opponent's statement that had he accepted voluntary departure and left the country, that he would have been barred for 10 years. There's no way, even if he had married his fiancée, there's no way he could have come back sooner than 10 years. You're disputing that? That's not the case, Your Honor. He could apply for a waiver. And so he was not statutorily ineligible for consular processing, which was the case in Salazar. In this case, there was still the possibility that he could get married and adjust status. And moreover, as— And not have to remain out of the country for the 10-year period? If he's granted waivers, the appropriate waivers, yes, that would be the case. There is no statutory ineligibility as far— When you say waivers, what is that? I guess I'm not familiar enough with the information. I'll just know what you're talking about. What does that entail? What would he have to show? Well, if he were to leave the United States, for example. He's been here unlawfully for more than a year, so he would be barred—he would be inadmissible for a period of 10 years. But that inadmissibility is waived if he can show extreme hardship to a United States citizen spouse, for example. Unless he returns, she would suffer extreme hardship. That might be one example, Your Honor. But the fact is that he could have accepted voluntary departure. And at the time, it wouldn't have made sense to apply for adjustment of status because he had not even proposed to his girlfriend until seven months after the immigration judge had entered the order of removal. So this is not a case where there's a relief that was available and foregone by former counsel. There was no relief at the time. He had a fraudulent application. And he just failed to exercise due diligence in this case. And where he has failed to do so, and there's no ineffective assistance, there is no equitable tolling. Well, you say he failed to exercise due diligence, but let me make sure I got the facts straight on this. If we credit his version of events, as you're saying we must, he's saying that his lawyer told him, go ahead and withdraw the asylum application. The judge is going to order you to depart, but you don't have to because you're planning to marry your, I don't know if she was his fiancee at that point, but you're, you know, they're already talking about getting married. And so her advice to him was just go on about your business. Don't leave the country. Go on about your business, plan the wedding. And then once you have gotten married, sort of come back and then we'll take care of the necessary paperwork. Right? So isn't that his version of events? It's unclear, Your Honor. He doesn't give details about what exactly he was advised. And the immigration judge and board both stated that there's probably not an allegation of ineffective assistance, but really an allegation of some misunderstanding, Your Honor. But that being the case, the immigration judge still corrected that, gave the proper advisals, told him he had to leave. He answered definitely, yes, definitely is what he said. He didn't just say yes. He promised to leave. He said he can't come back. The immigration judge told him, you got to leave by April or you can't, you know, you'll be ineligible for all this relief. So at that point, as this court stated in Abagian versus Holder in 2011, a reasonable person would suspect some error in former counsel's advice. And at that point, Petitioner had to do something. He didn't do anything from January to 2008 except wait to propose to his girlfriend. And that's just not sufficient for purposes of equitable tolling, Your Honor. Thank you. Thank you. I'll give you one minute. Okay. Judge Wofford, just to get back to your question on the record, page 215 and 216 of the record deals with his conversation with the notary and the belief that he would be deported if he told the truth, as well as the conversation with the attorney. Yeah, but I looked at that and she did not tell him that if you state these grounds, you will be deported. What she told him was after you have filed this application, if you now try to change what you've said and deny that you're gay, you will be deported. I assume that was before he was going to do the asylum officer interview? That's correct. So she said that if I did not say I was gay, I would be deported. Right. Yeah. You said she said that if you state these valid grounds for asylum, you will be deported. She never said that to him. Okay. I think it's in the earlier part of the decision. I just want to point out the board's decision relies on Aryan statements, not the petitioners. This goes back to the Chenery Doctrine, right? That the court can only affirm for a ground stated by the agency. So the board doesn't credit the petitioner's declaration as truthful. It actually relies on Aryan statements. Aryan statements are probably better for him than his own. Right. So the board's decision makes no sense because it also, it's not clear. It credits her statement, but then says that she believed that it was frivolous, right? The last thing I just want to point out, as an immigration practitioner, when somebody comes into your office after having filed with a notary for asylum, the first thing you ask, are the context of this application truthful? And is there any other reason that you're afraid to go back to your country? That's what competent counsel does. And that's not what was done here. Thank you. Okay. Thank you. Thank you both for your arguments. Excellent arguments in this case. The case of Phetasy versus Lynch is now.
judges: Murguia, Watford, Vanaskie